**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00454-REB

MARK LEE WILKINSON,

     Applicant,

v.

RAE TIMME, Warden at Fremont Correctional, and
JOHN SUTHERS, Attorney General of the State of Colorado,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J.**

     This matter is before me on the ***pro se* Second Amended Application for a**

**Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** ("Second Amended

Application") [#39][1] tendered to the Court October 11, 2011, by Applicant Mark Lee

Wilkinson and filed February 13, 2012.  Respondents filed an **Answer to Habeas**

**Petition** ("Answer") [#23] and Mr. Wilkinson filed **Applicant's Reply to Respondent[s']**

**Answer** ("Traverse") [#31].  On March 9, 2012, after the Second Amended Application

was accepted for filing, Respondents filed a **Supplement to Answer to Habeas**

**Petition Addressing Claim 8** ("Supplement") [#40], and Mr. Wilkinson filed

**Petitioner's Reply to Respondent[s'] Supplement to Answer to Habeas Petition**

**Addressing Claim 8** ("Reply") [#41].  On April 24, 2012, in response to an order

---

[1]   "[#39] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  I use this convention throughout this order.

directing the parties to file additional briefs, Respondents filed their **Second Supplement to Answer Addressing Claim 7** ("Second Supplement") [#45], and Mr. Wilkinson filed **Petitioner's Supplemental Reply to Respondents' Second Supplement to Answer** ("Supplemental Reply") [#51].

After reviewing the pertinent portions of the record in this case, including the Second Amended Application, the Answer, the Traverse, the Supplement, the Reply, the Second Supplement, the Supplemental Reply, and the state court record, I conclude that the remaining claims in the Second Amended Application should be denied and that this action should be dismissed.

## I. BACKGROUND

Following a jury trial, Mr. Wilkinson was convicted on three counts of sexual assault on a child by one in a position of trust, three counts of sexual assault on a child, three counts of aggravated incest, one count of sexual assault on a child by one in a position of trust as part of a pattern of sexual abuse, and one count of sexual assault on a child as part of a pattern of abuse. He was sentenced to an indeterminate term of fifty-two years to life in prison. The judgment of conviction and the sentence were affirmed on direct appeal. ***See People v. Wilkinson***, No. 01CA0897 (Colo. App. May 8, 2003) [#9-5]. On October 14, 2003, the Colorado Supreme Court denied Mr. Wilkinson's petition for writ of certiorari on direct appeal. (***See*** [#9-7].)

On November 26, 2003, Mr. Wilkinson filed in the trial court a Motion to Appoint Counsel seeking the assistance of counsel to pursue relief under Rule 35(c) of the Colorado Rules of Criminal Procedure (Crim. P.). (***See*** [#9-8].) On December 11,

2003, the trial court appointed counsel to represent Mr. Wilkinson.  (*See* [#9-9].)  On

February 12, 2004, Mr. Wilkinson filed in the trial court a motion to reconsider his

sentence pursuant to Crim. P. 35(b).  On September 15, 2005, counsel for Mr.

Wilkinson filed in the trial court a supplemental Crim. P. 35(c) motion.  (*See* [#10] at 28-

39.)

On April 6, 2007, following a series of hearings, the trial court denied all of Mr.

Wilkinson's postconviction motions.  (*See* [#9-11] at 34-42.)  The trial court's order

denying postconviction relief was affirmed on appeal.  *See People v. Wilkinson*, No.

07CA0946 (Colo. App. July 30, 2009) [#9-13].  On March 22, 2010, the Colorado

Supreme Court denied Mr. Wilkinson's petition for writ of certiorari in the postconviction

proceedings.  (*See* [#9-17].)

## II.  FEDERAL COURT PROCEEDINGS

The instant action was filed on February 23, 2011.  In his original application, Mr.

Wilkinson asserted seven claims for relief, including an ineffective assistance of counsel

claim with multiple subparts.  On October 11, 2011, Mr. Wilkinson tendered a Second

Amended Application that raised two additional claims for relief, claims 8 and 9.  On

February 13, 2012, I entered an Order [#38] granting Mr. Wilkinson leave to file the

Second Amended Application, but only to add claim 8.  I denied leave to amend to add

claim 9, because claim 9 was untimely and did not relate back to any of Mr. Wilkinson's

timely claims.  Mr. Wilkinson specifically claims in the Second Amended Application:

> 1.  that Counsel was ineffective during the plea bargaining
> process by failing to fully explain the benefits of the
> proposed plea agreement.

2.    that Counsel was ineffective during pretrial, trial, sentencing, and appellate proceedings because:

    (a)    Counsel failed to preserve Mr. Wilkinson's right to a preliminary hearing.

    (b)    Counsel failed to protect Mr. Wilkinson's right to a speedy trial by failing to enter a timely plea of not guilty.

    (c)    Counsel failed to conduct an adequate investigation, which led to exculpatory evidence not being presented.

    (d)    Counsel failed to prepare for and object to the testimony of the prosecution's expert witness.

    (e)    Counsel failed to endorse a defense expert to challenge the testimony of the prosecution's expert witness.

    (f)    Counsel failed to obtain and compel essential testimony from the victim's mother.

    (g)    Counsel failed to research and understand the rules of procedure and evidence and the applicable law.

    (h)    Counsel failed to participate in the trial at an acceptable level.

    (i)    Counsel failed to exclude evidence of Mr. Wilkinson's sexual orientation.

    (j)    Counsel failed to develop any discernable theory of defense.

    (k)    Counsel on direct appeal failed to argue that Mr. Wilkinson was denied a fair trial because counsel failed to gain admissibility of social services reports that would have supported a theory of defense.

    (l)    Counsel on direct appeal failed to challenge the trial court's ruling barring statements made by the victim to the family therapist.

    (m)    Counsel on direct appeal failed to challenge the trial court's ruling permitting the claim that Mr. Wilkinson's unrelated travel to Florida constituted flight to avoid prosecution.

(n)     Counsel on direct appeal failed to raise properly the issue of
        multiple convictions for one offense.

3.      that his Sixth Amendment right to a fair and impartial jury
        was violated by admission of evidence of his sexual
        orientation.

4.      that his Sixth Amendment right to compulsory process was violated
        by the trial court's failure to compel the victim's mother to appear
        and testify.

5.      that his Sixth Amendment right to a speedy trial was violated.

6.      that his right to a fair trial was violated when the trial court allowed
        an unendorsed expert witness to testify against him.

7.      that his sentence was aggravated illegally in violation of ***Apprendi
        v. New Jersey***, 530 U.S. 466 (2000) and ***Blakely v. Washington***,
        542 U.S. 296 (2004).

8.      that his rights were violated when the trial court denied his motion
        for a new trial based on newly discovered evidence.

9.      that his convictions on multiple counts violate double jeopardy.

I previously entered an Order to Dismiss in Part [#19] in which I dismissed claims

1, 2(a) - (c) & (f) - (n), 3, 4, and 6 as unexhausted and procedurally barred.  As a result

of that order and my February 13 order denying leave to amend to add claim 9, only

claims 2(d), 2(e), 5, 7, and 8 remain to be considered on the merits.

### III.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Mr. Wilkinson liberally

because he is not represented by an attorney.  ***See Haines v. Kerner***, 404 U.S. 519,

520-21 (1972); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I may

not be an advocate for a *pro se* litigant.  ***See Hall***, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

5

issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Wilkinson bears the burden of proof under § 2254(d). ***See Woodford v. Visciotti***, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. ***Harrington v. Richter***, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." ***Id***. at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." ***Id***. at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." ***Id***. at 784.  In other words, I "owe deference to the state court's result, even if its reasoning is not expressly stated." ***Aycox v. Lytle***, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and

pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question under § 2254(d)(1) is whether Mr. Wilkinson seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme

> Court and nevertheless arrives at a result different from [that] precedent." ***Maynard*** [***v. Boone***], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting ***Williams***, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" ***Williams***, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. ***Id***. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

***House***, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. ***See Williams***, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." ***Id***. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." ***Maynard***, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S. Ct. 786-87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and correspondingly, Mr. Wilkinson bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is

9

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo*, and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV.  MERITS OF THE CLAIMS

### A.  Claims 2(d) and 2(e)

Claims 2(d) and 2(e) in the Second Amended Application raise related issues of ineffective assistance of counsel.  It was clearly established when Mr. Wilkinson was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are mixed questions of law and fact.  *See id*. at 698.

To establish that counsel was ineffective, Mr. Wilkinson must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id*. at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is Mr. Wilkinson's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id*.  "For counsel's performance to be constitutionally ineffective, it

must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).  Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the prejudice prong, Mr. Wilkinson must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 131 S. Ct. at 792 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable.").  In determining whether Mr. Wilkinson has established prejudice, I must look at the totality of the evidence and not just the evidence that is helpful to Mr. Wilkinson.  *See Boyd*, 179 F.3d at 914.

Finally, conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Wilkinson fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed.  *See Strickland*, 466 U.S. at 697.

Mr. Wilkinson contends in claim 2(d) that counsel was ineffective by failing to prepare for and object to the testimony of the prosecution's expert witness Cheryl Young.[2]  He contends in claim 2(e) that counsel was ineffective by failing to endorse a

---

[2]Respondents contend that the portion of claim 2(d) in which Mr. Wilkinson challenges trial counsel's failure to object to the prosecution's expert witness is procedurally defaulted.  (*See* [#23] at 14.) Because my conclusion that the state court did not unreasonably apply *Strickland* in finding a lack of prejudice stemming from the testimony of the prosecution's expert witness necessarily encompasses all of claim 2(d), I need not consider separately whether any portion of claim 2(d) also is procedurally defaulted.

defense expert to challenge the testimony of Ms. Young.  Ms. Young was called to

testify

> immediately after the victim testified to discuss her
> experience in family dynamics of sexual assault, interviews
> of sexual assault victims, and "statement validity
> assessment" (SVA), which was described as "a protocol
> whereby the statements or allegations made by a child
> against an alleged offender are assessed and analyzed" in
> order to evaluate credibility.

([#9-13] at 12-13.)

Mr. Wilkinson specifically alleges in support of ineffective assistance of counsel

claim 2(d) that counsel

> should have objected to Ms. Young being accepted as an
> expert in an area that she was not qualified in, and her
> proposed testimony concerning a method that had been
> retracted by its creator several years before; and, failed to
> object to improper opinions by Ms. Young about the
> credibility of the witness.  Had [counsel] conducted an
> adequate pre-trial discovery and investigation, he would
> have known to challenge these areas.

([#39] at 20.)  Mr. Wilkinson specifically contends in support of ineffective assistance of

counsel claim 2(e) that counsel

> failed to endorse a defense expert, such as Dr. Esplin (who
> created the method that was used by Ms. Young, which had
> been retracted, and also testified at the Crim. P. 35(c)
> hearing) to rebutt [*sic*] Ms. Young's qualifications, her
> testimony based on a repudiated theory, and her claims of
> memory theory that was not based on any body of clinical
> work.

([#39] at 21.)

The Colorado Court of Appeals applied the proper ***Strickland*** standards to these

ineffective assistance of counsel claims and determined that the claims lacked merit

because Mr. Wilkinson failed to demonstrate he suffered any prejudice as a result of

counsel's allegedly deficient performance with respect to the testimony of the

prosecution's expert witness.  The Colorado Court of Appeals reasoned as follows:

> At the postconviction hearing, defendant presented
> the testimony of a scientific expert, who opined that (1) some
> of the People's expert testimony was inconsistent with the
> scientific literature on human memory; (2) the expert
> misapplied various concepts of SVA by applying them in a
> courtroom setting; and (3) the expert improperly tied the
> victim's memory to gestures made during his testimony.
> Defendant contends that his expert's testimony, if offered at
> trial, would have made a difference in the result.  After
> reading the entire record, however, we conclude that trial
> counsel's calling this defense expert to testify would not have
> created a reasonable doubt of guilt.  His testimony, though
> perhaps damaging to the testimony and reputation of the
> People's expert and to the credibility of the victims [sic]
> statements, would not have diminished the impact of the
> other evidence presented against defendant in this case.
>
> There was abundant evidence establishing the
> essential elements of the offenses of which defendant was
> found guilty.  In addition to the victim's own testimony,
> through impeachment the jury heard statements made by
> the victim's brother and sister during the investigation that
> corroborated the victim's story.  Moreover, appearing under
> the umbrella of immunity, defendant's sister testified at
> length about her efforts to help defendant flee from justice
> and establish a permanent false identity once he became
> aware of the allegations against him.  Given this strong
> evidence of guilt, it is unlikely that the result of the
> proceeding would have been different.

([#9-13] at 13-14.)

The determination of the Colorado Court of Appeals that Mr. Wilkinson failed to

demonstrate prejudice from counsel's alleged errors is not an unreasonable application

of **Strickland**.  It bears repeating that my determination of whether Mr. Wilkinson has

established prejudice requires examination of the totality of the evidence and not just

the evidence that is helpful to him.  *See Boyd*, 179 F.3d at 914.

Considering the totality of the evidence, I agree with the state court that Mr. Wilkinson fails to demonstrate a reasonable probability that the result of the proceeding would have been different if counsel had better prepared for and objected to Ms. Young's testimony or endorsed a defense expert to challenge Ms. Young's testimony. Even assuming the jury credited Ms. Young's expert testimony and that it enhanced the credibility of the victim's testimony, Ms. Young's testimony did not affect the impact of either the corroborating statements from the victim's brother and sister that were introduced through impeachment or the testimony of Mr. Wilkinson's sister regarding Mr. Wilkinson's efforts to flee from justice and establish a permanent false identity.  Mr. Wilkinson obviously disagrees with the conclusion that his sister's testimony evidenced an intention to flee from justice, because he contends he left Colorado before he was accused of any crimes, but he fails to demonstrate that the conclusion is based on an unreasonable determination of the facts.  I note initially that I must presume the state court's factual findings are correct unless Mr. Wilkinson rebuts that presumption with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and Mr. Wilkinson fails to present clear and convincing evidence to rebut the presumption of correctness that attaches to the state court's determination that Mr. Wilkinson's sister admitted assisting him in establishing a false identity after he had left the State of Colorado.  In fact, the testimony of Mr. Wilkinson's sister supports the conclusion reached by the state court. (*See* State Court R., Tr. 1/18/01 at 32-45.)  As a result, regardless of whether Mr. Wilkinson was aware of the accusations against him when he left Colorado, the facts

14

clearly demonstrate that he sought to establish a permanent false identity after leaving
Colorado and those facts support the conclusion that he was fleeing from justice.

In addition, the impact of Ms. Young's testimony was diminished somewhat
during cross-examination by counsel for Mr. Wilkinson because Ms. Young conceded
there is no test for truthfulness.  (*See* State Court R., Tr. 1/18/01 at 8-9.)  Furthermore,
counsel for Mr. Wilkinson also was able to utilize Ms. Young's testimony regarding the
use of age-appropriate language during closing argument to argue that the victim wasn't
telling the truth.  (*See* State Court R., Tr. 1/19/01 at 41, 43).

To summarize, I find that the state court's determination that Mr. Wilkinson failed
to demonstrate prejudice is not an unreasonable application of ***Strickland*** because he
fails to demonstrate a substantial likelihood of a different result.  ***See Richter***, 131 S. Ct.
at 792 (stating that "[t]he likelihood of a different result must be substantial, not just
conceivable.").  Therefore, I find that Mr. Wilkinson is not entitled to relief on his
ineffective assistance of counsel claims 2(d) and 2(e).

## B.  Claim 5

Mr. Wilkinson contends in claim 5 that his Sixth Amendment right to a speedy
trial was violated.  According to Mr. Wilkinson, he was denied a speedy trial because
fifteen months elapsed between the issuance of a warrant for his arrest in October 1999
and his trial in January 2001.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused
shall enjoy the right to a speedy and public trial."  Clearly established federal law
provides that four factors must be balanced in assessing whether a criminal defendant's

constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his right to a speedy trial; and (4) any prejudice to the defendant.  *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972).  "None of these factors, taken by itself, is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'"  *Jackson v. Ray*, 390 F.3d 1254, 1260-61 (10th Cir. 2004) (quoting *Barker*, 407 U.S. at 533).

The first *Barker* factor, the length of the delay, "actually is a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992).  As a threshold matter, I need not consider the other *Barker* factors unless the delay is "presumptively prejudicial." *Barker*, 407 U.S. at 530.  "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."  *Doggett*, 505 U.S. at 652 n.1.  If the length of the delay is presumptively prejudicial, I "must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *Id.* at 652.

The second *Barker* factor is the reason for the delay.  "The Supreme Court places the burden on the state to provide an inculpable explanation for delays in speedy trial claims."  *Jackson*, 390 F.3d at 1261.

The third *Barker* factor is the extent to which the defendant asserted his right to a speedy trial.  "[T]he sooner a criminal defendant raises the speedy trial issue, the

more weight this factor lends to his claim." *Id.* at 1263.

Finally, the fourth *Barker* factor is whether the defendant suffered any prejudice. This factor can be met with or without a particularized showing of prejudice. *See id.* at 1263-64. "In cases of extreme delay, criminal defendants need not present specific evidence of prejudice. Instead, they may rely on the presumption of prejudice created by the delay." *Id.* at 1263. However, there is no clearly established federal law that would relieve a defendant of making a particularized showing of prejudice when the delay is less than six years. *See id.* at 1263-64.

I must assess whether Mr. Wilkinson "has made a particularized showing of prejudice by considering the three interests that the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense." *Id.* at 1264 (internal quotation marks omitted). The most important of these interests is impairment of the defense. *See id.* "The burden of showing all types of prejudice lies with the individual claiming the violation and the mere 'possibility of prejudice is not sufficient to support [the] position that . . . speedy trial rights [are] violated.'" *Id.* (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)) (alterations in original).

As noted above, Mr. Wilkinson maintains that he was denied a speedy trial because fifteen months elapsed between the issuance of a warrant for his arrest in October 1999 and his trial in January 2001. Mr. Wilkinson was arrested in Florida on December 7, 1999, and extradited to Colorado in March 2000. The following summary

17

of the state court proceedings after Mr. Wilkinson was returned to Colorado are taken

from the Colorado Court of Appeals' decision on direct appeal, in which Mr. Wilkinson

argued that both his statutory and constitutional rights to a speedy trial had been

violated.

> Here, defendant appeared in county court on March 27, 2000, and waived his right to a preliminary hearing in order "to keep negotiations open." At his first appearance in district court, on April 18, 2000, he asked the court to set the matter for entry of plea on July 18, 2000.
>
> Shortly thereafter, defendant discharged his public defender and hired private counsel. At the July 18 hearing, the prosecutor advised defendant's new counsel that plea negotiations would cease upon entry of a not guilty plea and suggested that defense counsel should become more familiar with the case before entry of a plea. According to defendant, the prosecutor also indicated that it would be professional misconduct for defense counsel to allow defendant to enter his plea at that time under the circumstances. Defense counsel chose to postpone entry of the plea until he had done more research into the facts surrounding the case. Both parties agreed to schedule a hearing for entry of the plea for August 22, 2000.
>
> At the August 22 hearing, defendant entered his not guilty plea, and trial was set for January 16, 2001. Defendant objected to that trial setting on the basis that it was more than six months after April 18, 2000, the date, according to him, he originally had intended to enter his plea.
>
> Defendant moved to dismiss the charges based on alleged violation of his right to speedy trial. He argued that the prosecutor's policy on plea negotiations coerced him into delaying entry of his plea and that the statutory speedy trial period should be deemed to have begun to run on April 18, 2000.
>
> Following a hearing, the court denied the motion, finding that defendant had voluntarily taken the advice of his counsel in postponing entry of his plea and that the speedy trial period did not begin to run until August 22, 2000, when

> defendant entered his plea.  Defendant's trial commenced
> within six months of that date, on January 16, 2001.

([#9-5] at 4-5.)

The Colorado Court of Appeals rejected Mr. Wilkinson's speedy trial claims.  With respect to his constitutional claim, the Colorado Court of Appeals identified the factors that must be balanced under *Barker* and concluded as follows:

> Here, the reason for the delay was defendant's
> decision to defer entry of a plea in order to pursue plea
> negotiations.  Defendant has not demonstrated that he
> suffered any prejudice from the delay.  Under these
> circumstances, we agree with the trial court that defendant
> has not shown a violation of his constitutional right to speedy
> trial.

([#9-5] at 7.)  Mr. Wilkinson contends in this action that the Colorado Court of Appeals unreasonably applied the *Barker* factors, and that his constitutional right to a speedy trial was violated, because the Colorado Court of Appeals only analyzed two of the four *Barker* factors, the reason for the delay and the prejudice factor, and the Colorado Court of Appeals failed to address those two factors correctly.

With respect to the reason for the delay, Mr. Wilkinson agrees that the purported reason was to keep plea negotiations open, but he contends that the purported reason cannot justify any delay because the only plea ever offered was offered at the outset of the case and there were no further plea negotiations.  Furthermore, according to Mr. Wilkinson, this factor actually should be weighed against the government because he was prevented from entering a plea of not guilty, which would have triggered the statutory speedy trial clock, on March 27, 2000, and again on April 18, 2000, "because of intimidation, threats, and coercion" from both the prosecution and his own attorney.

19

([#39] at 49.)  As a result, he contends that the Colorado Court of Appeals "unreasonably applied [the *Barker*] test by completely ignoring any responsibility on the part of the government, and assigning full blame on the Petitioner's efforts to negotiate a plea."  ([#39] at 51.)  Mr. Wilkinson also contends that the determination of the Colorado Court of Appeals on direct appeal that he was pursuing plea negotiations cannot be reconciled with the trial court's determination in postconviction proceedings that Mr. Wilkinson would not have accepted a plea agreement.  The trial court's postconviction determination arose in the context of an ineffective assistance of counsel claim.  (*See* [#39-1] at 23-24.)

With respect to the prejudice factor, Mr. Wilkinson asserts that the existence of prejudice is not necessary to demonstrate a constitutional speedy trial violation.  He also contends in the second amended application, however, that he was prejudiced by "oppressive pretrial incarceration and anxiety and concern accompanying public accusation."  ([#39] at 53.)  Mr. Wilkinson asserts for the first time in his Traverse that the defense also was prejudiced because a crucial defense witness was unavailable at trial.  (*See* [#31] at 17.)

I find that Mr. Wilkinson is not entitled to relief on his speedy trial claim because the Colorado Court of Appeals did not unreasonably apply the *Barker* balancing test.  I note initially that "[h]abeas relief is only available if there is no possible balancing of the factors that both supports the [state court's] ultimate decision and is not contrary to clearly established Supreme Court precedent."  *Jackson*, 390 F.3d at 1267.

I assume, as the Colorado Court of Appeals apparently did, that the delay in

bringing Mr. Wilkinson to trial was presumptively prejudicial as it exceeded one year.

*See id.* at 1261 (stating "[t]he general rule is that the speedy trial right attaches when

the defendant is arrested or indicted, whichever comes first."). The Colorado Court of

Appeals also recognized that Mr. Wilkinson asserted his right to a speedy trial during

the pretrial proceedings. Therefore, the first and third ***Barker*** factors weigh in favor of

Mr. Wilkinson. The fact that the Colorado Court of Appeals did not explicitly discuss

these two factors, by itself, does not demonstrate that the state court unreasonably

applied the ***Barker*** test.

With respect to the second ***Barker*** factor, the reason for the delay, the record

indicates that Mr. Wilkinson voluntarily postponed entry of a not-guilty plea on the

advice of counsel in order to pursue plea negotiations. (***See*** [#9-5] at 5; ***see also*** State

Court R., Tr. 12/12/00[3] at 11-16, 20-22, 35-37.) In fact, Mr. Wilkinson concedes in his

Traverse "that he was interested in keeping his option of a plea agreement open."

([#31] at 13.) There is simply no indication that the prosecution's policy of ending plea

negotiations upon entry of a not-guilty plea was a delay tactic as Mr. Wilkinson

contends. Furthermore, his assertion that no further plea negotiations occurred is not

supported by the record. (***See*** State Court R., Tr. 12/12/00 at 17-18, 21, 37.) The fact

that the trial court made a finding during postconviction proceedings that Mr. Wilkinson

would not have accepted a plea agreement also does not demonstrate that the

Colorado Court of Appeals unreasonably applied ***Barker*** on direct appeal because

---

[3]The transcript erroneously indicates that the hearing on Mr. Wilkinson's motion to dismiss on speedy trial grounds and other pretrial motions was held on December 12, 2001, which would have been eleven months after his trial.

"review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. Therefore, I find that it was not unreasonable for the Colorado Court of Appeals to conclude that the delay was caused by Mr. Wilkinson's desire to pursue plea negotiations. As a result, it was reasonable to weigh the second *Barker* factor against Mr. Wilkinson.

The Colorado Court of Appeals also determined that the fourth *Barker* factor weighed against Mr. Wilkinson because he did not suffer any prejudice. I note initially that this determination is unreasonable only if Mr. Wilkinson makes a particularized showing of prejudice because the alleged delay was only fifteen months. *See Jackson*, 390 F.3d at 1263-64 (finding no clearly established federal law that would relieve a defendant of making a particularized showing of prejudice when the delay is less than six years).

Mr. Wilkinson's vague and conclusory assertion that he suffered "oppressive pretrial incarceration and anxiety and concern accompanying public accusation" ([#39] at 53), does not demonstrate that this determination was unreasonable. *See Jackson*, 390 F.3d at 1264 (stating that a mere possibility of prejudice is not sufficient to support a speedy trial violation). Furthermore, although Mr. Wilkinson asserts in his Traverse that the defense was prejudiced because a crucial defense witness was unavailable, (*see* [#31] at 17), his argument with respect to this witness does not demonstrate prejudice in the context of his speedy trial claim because it is apparent that the witness was available to testify at trial if she had been subpoenaed properly by the defense. (*See* [#9-5] at 19-20.) Finally, although Mr. Wilkinson is correct that a showing of prejudice is

not essential to establishing a speedy trial violation, "there is a reluctance to find a speedy trial deprivation where there is no prejudice." *United States v. Brown*, 600 F.2d 248, 254 (10th Cir. 1979).

In summary, the Colorado Court of Appeals did not unreasonably apply *Barker* in weighing the second and fourth factors weigh against Mr. Wilkinson.  Although the first and third factors weigh in favor of Mr. Wilkinson, it also was not unreasonable to conclude, on balance, that no constitutional speedy trial violation occurred.  This is particularly true given the absence of any particularized showing of prejudice and that the length of the delay, at most, was fifteen months.[4]  Therefore, I find that Mr. Wilkinson is not entitled to relief on his speedy trial claim.

## C.  Claim 7

Mr. Wilkinson contends in claim 7 that his sentence was aggravated illegally in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).  He specifically contends that his sixteen-year sentence for aggravated incest (count 12), his twenty-year sentence for sexual assault on a child by one in a position of trust as part of a pattern of sexual abuse (count 13), and his twenty-year sentence for sexual assault on a child as part of a pattern of abuse (count 14), violate *Apprendi* and *Blakely* because each of those offenses is a class three felony and the presumptive sentencing range in Colorado for a class three felony committed on or after July 1, 1993, is four to twelve years.

---

[4]Although neither party discusses it, I note that the record indicates Mr. Wilkinson contested his extradition from Florida following his arrest in December 1999.  (*See* State Court R., Tr. 7/18/00 at 11.)  Therefore, a portion of the fifteen-month delay can be attributed solely to Mr. Wilkinson's efforts to prevent his extradition from Florida.

The Supreme Court held in **Apprendi** that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Apprendi**, 530 U.S. at 490.   In **Blakely**, the Supreme Court clarified "that the 'statutory maximum' for **Apprendi** purposes is the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant**." **Blakely**, 542 U.S. at 303.

Respondents do not dispute that the offenses for which Mr. Wilkinson was convicted in counts 12-14 are class 3 felonies under Colorado law or that the presumptive-range sentence for an ordinary class 3 felony under Colorado law is four to twelve years in prison.  However, Respondents argue that the **Apprendi**/**Blakely** claim lacks merit because the actual statutory maximum sentence under Colorado law for counts 12-14, each of which was committed after November 1, 1998, is life in prison.

With respect to aggravated incest (count 12), it is clear that aggravated incest under Colo. Rev. Stat. §18-6-302(1)(a) (2001) is subject to the sentencing requirements of §16-13-804(1)(a) (2001).  **See** Colo. Rev. Stat. §18-6-303(3) (2001) ("The court shall sentence a defendant who is convicted of any offense specified in this part 3 committed on or after November 1, 1998, pursuant to the provisions of part 8 of article 13 of title 16, C.R.S.").  Pursuant to Colo. Rev. Stat. §16-13-804(1)(a) (2001), "the district court having jurisdiction shall sentence shall sentence a sex offender to the custody of the department for an indeterminate term of at least the minimum of the presumptive range specified in section 18-1-105, C.R.S., for the level of offense committed and a maximum

of the sex offender's natural life." Pursuant to Colo. Rev. Stat. §16-13-803(5)(a)(IX) (2001), persons convicted of aggravated incest under Colo. Rev. Stat. § 18-6-302 (2001) are sex offenders.

With respect to the pattern of abuse sexual assault counts (counts 13 and 14), the Colorado General Assembly has made those offenses *per se* crimes of violence. *See* Colo. Rev. Stat. §18-3-405.3(2)(b), (4) (2001) (sexual assault on a child by one in a position of trust as part of a pattern of abuse is subject to the crime of violence sentencing in §16-11-309); Colo. Rev. Stat. §18-3-405(2)(d), (3) (2001) (sexual assault on a child as a part of a pattern of sexual abuse is subject to the crime of violence sentencing in § 16-11-309). Pursuant to Colo. Rev. Stat. §16-11-309 (2001), "any person convicted of a sex offense as defined in section 16-13-803(5), committed on or after November 1, 1998, that constitutes a crime of violence shall be sentenced to an indeterminate term of incarceration of at least the midpoint in the presumptive range up to a maximum of the person's natural life, as provided in section 16-13-804(1)." The relevant definition of "sex offense" includes both sexual assault on a child by one in a position of trust under §18-3-405.3, *see* Colo. Rev. Stat. §16-13-803(5)(V) (2001), and sexual assault on a child under §18-3-405, *see* Colo. Rev. Stat. §16-13-803(5)(IV) (2001).

Therefore, because the statutory maximum sentence for aggravated incest (count 12) and the pattern of abuse sexual assault counts (counts 13 and 14) is a life sentence, the sixteen-year sentence Mr. Wilkinson received for aggravated incest and the twenty-year sentences he received for the pattern of abuse sexual assault counts do

not violate **Apprendi** or **Blakely**.  **See Vogt v. Novak**, 153 Fed. App'x 474, 477 (10th

Cir. 2005) (finding that **Apprendi** was not violated by enhanced sentence pursuant to

conviction for offense that is a **per se** crime of violence under Colorado law).  Mr.

Wilkinson's argument that certain state statutes were misapplied does not demonstrate

that his federal constitutional rights were violated in any way.

Finally, Mr. Wilkinson argues in the Supplemental Reply that, even if the statutory

maximum sentence for counts 12-14 is a life sentence, his rights under **Apprendi** still

were violated because the mandatory minimum sentences for those counts was

increased as a result of judicial fact finding.  This argument lacks merit.  **See Harris v.**

**United States**, 536 U.S. 545, 565 (2002) (explaining that judicial factfinding that

increases a mandatory minimum sentence does not violate **Apprendi** as long as the

sentence is not extended beyond the statutory maximum).  Therefore, I find that Mr.

Wilkinson is not entitled to relief on claim 7.

## D.  Claim 8

Mr. Wilkinson contends in claim 8 that his rights were violated when the trial court

denied his motion for a new trial based on newly discovered evidence.  The newly

discovered evidence is the fact that the victim recanted his trial testimony.  "In 2003,

defendant's son signed an affidavit stating that he had lied under oath and that his

entire testimony at trial had been false." ([#9-13] at 5.)  Mr. Wilkinson argued in the

state court postconviction proceedings that he should be granted a new trial based on

the newly discovered evidence, but the state courts disagreed, finding that the newly

discovered evidence was not credible and probably would not result in an acquittal if

presented at a new trial.  (**See** [#9-13] at 5-10.)  Mr. Wilkinson specifically asserts that

"[t]he State Court's ruling, denying the Plaintiff a new trial based on newly discovered

evidence, was contrary to, or an unreasonable application of the clearly established

federal law as determined by the Supreme Court of the United States in **United States**

**v. Johnson**, 327 U.S. 106 (1946)."  ([#39] at 62.)

Mr. Wilkinson's reliance on **Johnson** is misplaced because that case did not

arise in the habeas corpus context and did not decide any constitutional issues.  In

**Johnson**, the respondents sought a new trial following convictions in federal district

court on charges of tax evasion.  **See Johnson**, 327 U.S. at 108.  As a result, the

Supreme Court's discussion of newly discovered evidence in **Johnson** is not relevant to

Mr. Wilkinson's habeas corpus claims challenging the validity of a state court conviction

under 28 U.S.C. § 2254.  Pursuant to § 2254(a), "a district court shall entertain an

application for a writ of habeas corpus in behalf of a person in custody pursuant to the

judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."

In the habeas corpus context, it is clear that "[c]laims of actual innocence based

on newly discovered evidence have never been held to state a ground for federal

habeas relief absent an independent constitutional violation occurring in the underlying

state criminal proceeding."  **Herrera v. Collins**, 506 U.S. 390, 400 (1993); **see also**

**Wild v. Oklahoma**, 187 F.2d 409, 410 (10th Cir. 1951) (affirming denial of habeas

corpus relief premised on alleged false and perjured testimony by prosecution

witnesses because "[t]his court has consistently followed the rule that a writ of habeas

corpus should not be granted upon the grounds that false and perjured testimony was used unless it is shown that it was knowingly used against the defendant by the prosecuting officers in the criminal case."); *Isbill v. Workman*, 62 F. App'x 863, 864-65 (10th Cir. 2003) (citing *Herrera* for the proposition that a claim of actual innocence absent any independent constitutional violation in the underlying criminal proceeding did not state a federal constitutional claim).  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  *Herrera*, 506 U.S. at 400.  "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."  *Id.* at 401.

Mr. Wilkinson fails to allege or demonstrate the existence of any federal constitutional violation in connection with his newly discovered evidence claim.  He does contend in the Second Amended Application that the failure to grant a new trial violates his Sixth Amendment right to have a jury determine the truthfulness of any fact that weighs on the question of guilt or innocence (*see* [#39] at 72), and he contends in his Reply that the failure to grant a new trial violates his right to due process (*see* [#41] at 4-8).  However, these arguments, which are premised on alleged constitutional violations in the context of the state court's refusal to grant a new trial, do not demonstrate the existence of any independent constitutional violation during the course of the underlying criminal proceeding that resulted in Mr. Wilkinson's convictions.  Under these circumstances, Mr. Wilkinson's claim of actual innocence does not entitle him to habeas corpus relief.  *See Herrera*, 506 U.S. at 400.  As a result, I find that Mr.

Wilkinson is not entitled to relief with respect to claim 8.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#39] filed by Applicant Mark Lee Wilkinson is **DENIED**;

2.  That this case is **DISMISSED WITH PREJUDICE**; and

3.  That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED at Denver, Colorado, June 1, 2012.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge